### In re GOLD RUN MINING & TUNNEL CO.

(District Court, D. Colorado.   September 14, 1912.)

No. 2,356.

1. BANKRUPTCY (§ 78*)—INVOLUNTARY PROCEEDINGS—RIGHT OF RECEIVER TO CONTEST.

A receiver for a corporation, appointed by a state court and in possession of its property, may resist proceedings to have the corporation adjudged a bankrupt.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 111, 112; Dec. Dig. § 78.*]

2. BANKRUPTCY (§ 76*)—PETITIONERS—ESTOPPEL.

A creditor of a corporation, who assisted in having a receiver appointed for it by a state court, and filed its answer consenting thereto, is estopped to subsequently file a petition against it in bankruptcy, based on such appointment as an act of bankruptcy.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 50, 56, 97, 99, 100; Dec. Dig. § 76.*]

3. BANKRUPTCY (§ 60*)—ACTS OF BANKRUPTCY—CONSENTING TO APPOINTMENT OF RECEIVER—"APPLIED FOR A RECEIVER."

The consent of a corporation to the appointment of a receiver for its property on an application by others is not equivalent to having "applied for a receiver," as an act of bankruptcy under Bankr. Act July 1, 1898, c. 541, § 3a (4), 30 Stat. 546 (U. S. Comp. St. 1901, p. 3422), as amended by Act Feb. 5, 1903, § 2, c. 487, 32 Stat. 797 (U. S. Comp. St. Supp. 1911, p. 1493).

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 80; Dec. Dig. § 60.*]

4. BANKRUPTCY (§ 63*)—ACTS OF BANKRUPTCY—CORPORATIONS.

A corporation can admit its inability to pay its debts and its willingness to be adjudged a bankrupt on that ground, to constitute an act of bankruptcy under Bankr. Act July 1, 1898, c. 541, § 3a (4), 30 Stat. 546 (U. S. Comp. St. 1901, p. 3422), as amended by Act Feb. 5, 1903, § 2, c.

---

487, 32 Stat. 797 (U. S. Comp. St. Supp. 1911, p. 1493), only by some corporate act, and such an admission, signed by a majority of its directors individually, is ineffective.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 63.*]

In the matter of the Gold Run Mining & Tunnel Company, alleged bankrupt. On involuntary petition. Petition dismissed.

F. B. Tiffany, of Denver, Colo., for the petition.

O. A. Johnson, of Boulder, Colo., opposed.

POPE, District Judge. The holding of the court upon the several matters argued is as follows:

[1] 1. The receiver appointed by the state court is competent to resist the petition for adjudication. Matter of Hudson River Co. (D. C.) 173 Fed. 934.

[2] 2. The receiver's answer, on page 5, contains the following:

"Your intervener would further state that he was on or about the 17th day of May, A. D. 1912, appointed receiver of said company, but that he was not appointed receiver on the ground that said company was insolvent, but on other grounds, and that at that time the said E. A. Austin, who filed the petition to have this company adjudged bankrupt, voluntarily filed an answer on behalf of said company, admitting the allegations set forth in the complaint asking for the appointment of receiver, and consented on behalf of said companies, both the Gold Run Mining & Tunnel Company of Colorado and the Gold Run Mining & Tunnel Company of Arizona, that said companies should be placed in the hands of a receiver, and that said E. A. Austin thereafter signed the bond for this receiver in order that he might qualify as such receiver."

There is also an allegation of the taking possession by the receiver. Those matters were duly established by the proofs on the trial. This state of facts estops the petitioner to seek the adjudication prayed. Simonson v. Sinsheimer, 95 Fed. 948, 37 C. C. A. 337; Lowenstein v. Henry McShane Mfg. Co. (D. C.) 130 Fed. 1007; Woolford v. Diamond State Co. (D. C.) 138 Fed. 582.

3. The amount due the petitioner is by the Arizona corporation having the name of the Gold Run Mining & Tunnel Company, and not by the Colorado company of the same name, the defendant herein. The former was the operating company at the time the money was advanced by the petitioner for operating purposes; the defendant company not having been then fully organized. The debt was primarily that of the Arizona company, and the proof is not satisfactory that the Colorado company ever assumed it. The note claimed to evidence this is not produced. On February 12, 1912, and thus when this note, if given by the Colorado company, was outstanding against it, that company made a sworn report to the Secretary of State of Colorado that the amount of its indebtedness was $900, which fact shows that at that date this note was not considered a liability of the Colorado company. In addition, it may well be doubted if, at the date of this note, March 18, 1909, the Colorado company was competent to contract. Its organization was at that time purely inchoate, with no stock issued, and with the list of its stockholders conjectural. The obligation, if one was attempted

by the Colorado corporation, would seem thus to be nonenforceable for lack of power in the organization to contract. Aspen Co. v. City of Aspen, 5 Colo. App. 12, 37 Pac. 728.

[3] 4. The first act of bankruptcy alleged is that the company, while insolvent, consented to the appointment of a receiver of its property in the state court upon the ground of insolvency. This, however, cannot avail for the following reasons: (a) This is not an act of bankruptcy. The statute makes it an act of bankruptcy "to apply for a receiver." This is defined by Collier (8th Ed., page 83) to be "the voluntary application * * * of a corporation under resolution of its board of directors." Mere consent, which is passive, is not tantamount to application, which is affirmative. (b) The proof is not satisfactory that at the date of the filing of the petition the company was insolvent. (c) Viewing the complaint as alleging that "a receiver has been put in charge of defendant's property," and thus within the latter clause of section 3a (4) of the Bankruptcy Act as amended (although it falls short of such an allegation), there is no satisfactory proof that such action by the state court was upon the ground of insolvency.

[4] 5. The second ground of bankruptcy alleged is not sustained by the proofs. This allegation is as follows:

"That said the Gold Run Mining & Tunnel Company did on or about the 10th day of July, 1912, in writing by its secretary, duly authorized so to do, admit that it was unable to pay its debts, and at the same time expressed its willingness to be adjudged a bankrupt."

The proof shows that any authority given to make such admission was by the directors personally, and not by any corporate act. The consent given in evidence is as follows (italics ours):

"We, the undersigned, being a majority of the board of directors of the Gold Run Mining & Tunnel Company, hereby authorize and empower F. B. Tiffany, secretary of said company, to certify, in writing, that said company is unable to pay its debts, and to consent that said company be declared a bankrupt. Signed this 5th day of July, 1912."

This is signed by a number of individual directors. It is clear that this was an individual, not a corporate, act, and thus has no relevancy as indicating what the defendant corporation as such authorized. 10 Cyc. 774–776, 782. Further, the alleged admission does not seem to have been made by the Colorado, but by the Arizona, corporation. The paper put in evidence showing the admission does not state which corporation was so admitting; but the seal attached is that of the Arizona, not the Colorado, company.

6. On the whole, the court sees no principle of justice, nor any legal ground presented by this record, why the administration of the estate of the defendant company should be taken from the receiver appointed by the state court and vested in the court of bankruptcy. The petitioner, Austin, as pointed out in paragraph 2 of this memorandum, acquiesced and assisted in the proceeding by which such administration was placed in the state court. There it may remain.